May it please the Court, good morning. I'm Steve Thompson. I represent Rick Kite and the former United Transportation Union. The issue in this case is whether or not the trial court followed this court's mandate from the last appeal to restrict its judicial review solely to the integrity of the arbitral process or whether or not it veered from that duty to decide the case on factual merits due to its own personal predilections. Unfortunately, from the entire record of this matter, the court did the latter. In reviewing and preparing for this, I conclude that my former partner, Mr. Pope, comprehensively detailed the case and meticulously cited to the record I'm not going to do that now. What I would like to do is focus on a number of finite issues and answer your questions. We know that the court had substantial dispute with this court's mandate from the last appeal. There were a number of statements that the court made throughout the trial which indicated a substantial disagreement and I don't need to really go through those again. We're aware of that. Yes. Although it wouldn't be the I think what's far more important, Your Honor, is that that disagreement commingled with this court's fundamental personal and professional views about the use of alcohol in transportation produced this result. And those views and the comments the court made are important to understand what happened here. The court, at Excerpt to Record 33, interrupted Mr. Schollmeyer during his testimony. Mr. Schollmeyer was the general chairman for the union, to indicate quote, I did 27 years of air crash litigation flight safety and flight have any drugs or alcohol in their system when they operate an airplane. Do you understand that? The point of that question makes no sense in the context of a railroad case. More importantly, how does a man who has done 27 years of aircraft litigation get the federal aviation rule on alcohol use in flight factually so wrong? He wasn't somebody, the judge wasn't wasn't fooling anybody. He didn't and he wasn't trying to dissuade. I think it demonstrates that that's the world that the court wants. A world where there is complete safety because there is no alcohol use in transportation. Let me focus on a question that I have no knowledge personally about operating aircraft but I did used to work for the Santa Fe Railroad in the summer when I was in college. Yes. So I know the difference between a conductor and an engineer. Yes sir. And a fireman. Here's my question. There was a neutral in the arbitration panel. This goes back before it went to the prior panel. And she was apparently was inclined to determine that the discipline of a kite was too strong for a single violation. Yes. Because of infirmities in the proof about the other quote violation. Yes. And someone told her unless you straighten up your act you'll you'll never sit as a neutral again. That was Mr. Boulder the railroad partisan. So she recused. She she stepped down. Right? That is correct. Okay. And a new neutral was selected. Yes. Mr. Peterson. Okay. Is there any evidence that Mr. Peterson was told of that? There is. Mr. Shulmire testified at trial and in his declaration which was part of the is part of the record that he pointed that out to Mr. Peterson during the course of the hearing. That being I'm trying to make sure that we're talking about the same thing. The alleged threat to Zimmerman. Yes he did. And now Mr. Peterson denies that so that there is a factual difference in that connection. I'm trying to figure out I sort of relatedly how there how it's possible there's a factual dispute about whether the query letter was or was not there first time around. Not there is not there is the issue Your Honor and and that's the whole point. The query letter was not part of the on-property hearing and and the process is important here. So my question is more specific. How is it there's a factual dispute about whether it was there or not as a part of the and my answer is is specific. Okay. The investigation is held by company officers on the property and they are handling and deciding the investigation. That is the on-property handling. That's not an answer to my question. Is there not a confined record that is created for the hearing? That is a confined record and it is the on-property handling. Then it goes between the higher members of the Union and the railroad back and forth. They they meet they they essentially try and resolve the issue. When that fails the record is closed and then it goes to arbitration. The answer to your question is it was only then when Mr. Boldra filed his submission to the Zimmerman board and then later on to the Peterson board that the curry letter first surfaced. Isn't that disputed? No it is not. If in fact if you will look at the the submittals that we put in the record you will find that the curry letter doesn't appear in the on-property handling which Mr. Schollmeier submitted both to the Zimmerman board and to the Peterson board. I tried tracing this through both ways and I'm and I'll hear from opposing counsel minute about whether there's a dispute about that. The first letter the Crispin letter doesn't talk about the level of alcohol that was anything but that there was a positive finding on a certain date that's it. It's hard for me to understand how the Zimmerman could have drafted the what we're I'm gonna call the settlement agreement the way she did if she'd had had the query letter because she makes a point there of saying it's she doubted the I guess more generously that that the parties agreed because it was supposed to be a settlement agreement there was insufficient proof of the first violation because the answer letter that seems to be a pretty tough sell. That would be true except for this one point. Ms. Zimmerman observed the rule. The curry letter wasn't part of the on-property handling and so she didn't consider it which is what she should have done. Even Mr. Peterson in his deposition agrees that that is in fact the process. I think you're reading the to this somewhat confounding situation where my understanding is Ms. Zimmerman took the position that because her opinion wouldn't have been accepted by one of the parties she then ought to recuse herself and not issue her opinion. I frankly don't understand that at all but anyway that's not why we're here today. I don't either. And then a then a neutral a new neutral I'm skipping over the process of getting permission to pay for the second arbitration but then a new neutral was surfaced in in the in the form of Mr. Peterson. That's correct. And there was a do-over. That's correct. And so your argument about the do-over is then the curry letter emerged is that the problem? Well it's multifactorial. First it's a do-over. The parties agreed to have Ms. Zimmerman decide their case not Mr. Peterson. Okay but they can't force Ms. Zimmerton to decide the case and she decided to recuse herself. They I mean that is what happened and I that is what it is. That is what it is but the problem that was procured by fraud. Well okay but there but but it's happened and so what would what's the next appropriate step to have occurred? The next appropriate step was that Ms. Zimmerman's initial draft award should have been implemented. That's what we claim should have happened in this case. With with two arbitrators? Yes two arbiters can make it can make it make an award. Mr. Schollmeyer has said from the get-go and it's never been challenged that he agreed with that award and two people in agreement can make an award that should have been incorporated as an award and enforced by a court. Even though she later testified in the district court found her credible in saying her view is that she would have ruled for the railroad had she been ruling as opposed to memorializing a settlement agreement. Well that comes down to to the the issue in this case because the most important document introduced in this case was one that the district court never even addressed or mentioned in its findings and that's a trial exhibit 7 excerpt of record 324 which is her national mediation board activity report. Nine weeks before the threat is issued, Ms. Zimmerman in her own hand under criminal penalties for false reporting reports to the NMB that she decided the case and she codes it as her decision specifically. For purposes of being paid for compensation. She's supporting that work. Okay well for purpose she has to she has the rules as we pointed out in the in the NMB document require that she in fact file the report and file a coding in order to get paid. There's certainly a dispute about what happened there or what the motivations were and I'll grant you all of that and as I said I've used the word confounding I think it's confounding but then all of that went to the district court and your argument is that the district court exceeded the scope of its duties I should say on remand is that right? Yes. Because he found that she was to do so the district court had to disregard the activity report. In order to rule in your favor do we have to decide that his credibility finding was erroneous? To rule in my favor I think what you need to find is that he committed clear error in terms of not considering and explaining that very contradictory evidence coupled together with the undisputed testimony that the two people who supposedly made this settlement agreement that she's testified about vehemently disagree that that ever happened. There's two ways it seems to me to look at the Zimmerman recusal. One is that she did absolutely the right thing and entirely inappropriate suggestion or direction you'll never have lunch in this town again sort of thing and that she stepped down and then the process had a new neutral and that went to conclusion. The other way to look at it is that the intimidation if you will affected her ultimate decision whether she would have in a panel situation ruled for or against your client. Correct. And it sounds like the district court found the former and not the latter. That's what happened. The issue is this we have to take a look at and remember that this court has said that when a district court wholesale adopts one side's findings of fact and conclusions of law you're entitled to apply close scrutiny to that case and that's exactly what happened here. 40 of the 48 findings of fact offered by the railroad were taken up by the railroad virtually unaffected and in addition to that the district court then supplied finding of fact number 8 which is critical in this case. Neither side offered it and the court in finding of fact number 8 adopted the Curry letter that wasn't an issue at that level at all. That was not a factual finding that had anything to do with the arbitral process, the integrity of the process itself. What it had to do was with the court's predilection to find the underlying facts in a fashion that squared with its view of the world. Unfortunately, that's what happened. Do you want to save your remaining time? I do with one other, one other, if I may Judge Hawkins address just your idea for a moment. Arbiters aren't retained in order to run popularity contests. Every time they make a decision they risk being finding somebody who can't accept their award and is vehemently opposed to it. I'll stop, thank you. Good morning, your honors. Donald Monroe for BNSF Railway. There's two competing stories here. The plaintiff's story is extortion. The railroad story is this was a failed attempt to impose a settlement. But it's not this court's job at this point to decide which of those stories is correct. Judge Layton has already done that. The only question you have before you is whether the railroad story, the story that Judge Layton picked, is plausible in light of this record. Did the district court exceed the scope of the remand? Absolutely not. In fact, the district court faithfully applied each and every element of this court's test. He didn't review the merits. He didn't say I'm ruling this way because I find that Mr. Kite was an alcoholic who doesn't belong in the cab of a locomotive. He didn't say that. What he said was I conclude that... The conductor, my friend, is in the back of the train, not the front. I respectfully disagree, your honor. The conductor should sit in the cab of the locomotive in modern railroad operations. Who runs, who operates the train, the engineer? The engineer operates the train at the direction of the conductor. The conductor is in charge of the operation. Could we talk about the Curry letter? Yes. Should the Curry letter have been considered? Absolutely, your honor, and here's why. The Curry letter was not before Ms. Zimmerman. It was before Mr. Peterson. Did you say, I lost, it's an echo up here. Did you say the letter was not before Ms. Zimmerman? What Ms. Zimmerman had and what she found was sufficient evidence was the Crespin letter. Right, and if you only have the Crespin letter, then reading her, I don't know, I guess we'll say, I'll say settlement agreement, the draft, the unsigned draft. Yes. Makes sense, right, because she says there really isn't sufficient evidence of the first violation. Okay, so is it undisputed that she didn't have the Curry letter? Correct. Okay, well that's very helpful to me because I lost thread of that in the briefing trying to figure that out. It is a little confusing. Okay, so if that's the case and there's a do-over, why is it fair to consider the Curry letter? Because before Mr. Peterson, the evidentiary standard, what's considered, what he can consider is defined by the public law board agreement. And what the public law board agreement says in paragraph F is that the parties may submit evidence and data in support of their positions. What the railroad did was it added the Curry letter to the packet of information that went before the public law board. Now, Mr. Peterson. It added it? Yes. Without objection? Without objection. And. So here's the sinister view from the opposing side, which, of course, you're way ahead of us, and I'm sure. But anyway, just bear with me. Isn't the sinister view that they got into the first arbitration agreement that the railroad realized it goofed and didn't include the evidence it really needed to prove the first violation, didn't have a Curry letter because the Crespin letter was, didn't cut it, issued a, you know, there was a blow up over that when one arbitrator, Zimmerman, balked and said, hey, there, you don't, you haven't really proved the first violation. Right. In the course of that conflict, there was a, again, viewing everything in the most sinister fashion, if I could, in the light most favorable, that there was this threat that the arbitrator then recuses herself, perhaps because there's the threat and she thinks that's improper. And at the do over the railroad then inserts the Curry letter. And his argument is that that's a corrupt process that rewards very unprofessional behavior by the railroad representative. What is your response, please? My answer to that is none of that is supported by this record. Well, the Curry letter wasn't there first time around, and you think it's fair game to include it. The whole predicate is that there was corruption. He doesn't even get to challenging Peterson without showing that there was corruption at the first argument about corrupt letter was a do over. That was unfair. That's his argument. Yes. But my but the point is that there has to have been corruption in the first instance for this to be a problem. Hearing me, that's his argument about a corrupt process, as opposed to saying, gee, we blew it. We can only really prove the one violation. And what I'm saying is there wasn't corruption in the Zimmerman board. She testified it wasn't corrupt. She said, look, I was not threatened. Her testimony is what Mr. Bolger said is I have not agreed to this. And in the absence of agreements, very well established policy that an arbitrator does not reinstate a two time rule. Gee, offender. I asked her, did you perceive Mr. Bolger's? I'm reading from her deposition. Did you perceive Mr. Bolger's statement to that effect to be a threat of economic harm? Answer. I did not. OK, but she did do what I described as confounding. So that's that's just me talking, but it's in my scorecard that it is really hard for me to understand that an arbitrator who rule against one party and that party won't accept the result. After all, that party doesn't have to accept a result. So what do I make of that? Well, look, I think the railroad wishes that Ms. Zimmerman had just had the guts to go ahead and rule on the merits, because what she says is, again, I'll read from her testimony. There was definitely enough evidence in the record to conclude that the carrier had met its burden by proving the substantial evidence of both the first and second offense. Well, then how do I make a sense of what she said about the settlement agreement, which is that they really didn't have enough? And you just told me there wasn't. They didn't have the Curry letter. Because what she was relying on was the Crespin letter. And she says, I had enough evidence, but I had to have a fig leaf. And so that here in response to to plaintiff's reliance on this administrative form that that he's made a big deal of, she says the parties. Again, this is from her testimony. The parties agreed essentially to find the record procedurally defective. She's saying the parties wanted me to, this is what I thought the parties wanted me to do. This is how they were going to write it, to avoid damage to the overriding principle, this idea that you don't reinstate two-time offenders. So she says this was a fig leaf. This was an idea that we could use to cover up the fact that this is a settlement. And she says the way the settlement was put together, it would have been on the NMB system as a partially sustained result. Of course she's not going to code it as a settlement. If she's trying to disguise the fact that it's a settlement, she's not going to put it on the form as a settlement. So she was trying to get to a point where both she could get Mr. Kite back to work because she thought that BNSF would be okay with it, as long as it wasn't obvious that the railroad was agreeing to put this two-time alcoholic back to work. That's what she was trying to accomplish. Now, do I think that she did this perfectly correct? No, of course not. But given that her testimony is, I wasn't threatened, I didn't recuse myself because of anything that Mr. Bouldress said, I recused myself because I didn't think Mr. Schollmeyer could accept a ruling on it. Didn't she use appearance as a basis? She thought ultimately there would be an appearance problem if she were to go through with this. So I took that as saying, I'm kind of between a rock and a hard place here because I tried to indirectly broker this onto a piece of paper. It's not panning out. I'm out. And that's how I read it. Is that correct? Yes, exactly. That is exactly correct. She said, again, I'll read you her testimony. I could have reviewed the record and issued an impartial result, but I did not believe that the parties would accept it as such. And I asked her, that's the sole reason you recused yourself? Answer, that's the only reason. Now, you may think that she made a mistake, that this was confounding, that this was silly, that she shouldn't have done this. But it's not because she was threatened. It's not because Mr. Bouldress strong-armed her and said, you'll never work in this town again. She specifically didn't. That was said. But what he says, and again, let me give you Ms. Zimmerman's interpretation. He said he hadn't agreed to this. In the absence of an agreement, you don't put two-time offenders back to work. What did Mr. Bouldress say about whether he uttered those words, counsel? What he says is that he was trying to describe how important this was. I don't think you're answering the question. He said, I don't know. I can give you the exact, his exact version. Would you? I'd appreciate it. Sure. He says, this would create an emotional reaction. And I don't know how I could make the point any clearer than if I had said, railroads don't use arbitrators who put two-time offenders back to work. And what this Court said in its earlier opinion in this case was there's differing ways you can interpret that. You could interpret it as a threat, as the plaintiffs do, or you could interpret it as him just saying inartfully that this was a very important thing. But isn't that why your strongest argument is that all of it comes back to the district court being able to eyeball these people and make credibility determinations? Absolutely, Your Honor. This is a credibility case. Plaintiff's case comes down to this. Mr. Bouldress is a liar. Ms. Zimmerman is a liar. Mr. Peterson is a liar. They're all lying. All of them. I don't think they think that Mr. Bouldress is lying. I think they think Mr. Bouldress said what Mr. Bouldress says he said. Well, they think that Mr. Bouldress is mischaracterizing what he said to the arbitrator and his intent. Because Mr. Bouldress specifically testified, I never said anything to Ms. Zimmerman that I intended as a threat. I never meant in any way to suggest that the railroad wouldn't use her going forward. And, in fact, we did use her going forward in a number of cases. So they're saying, oh, that's just, that's not true. But the district court heard Mr. Bouldress' testimony and believed him. The court's findings were that he was credible. The court's findings were that Ms. Zimmerman was credible. Now, where there was a testimony that was not deemed credible was in connection with Mr. Schollmeyer. And this concerns the second, what we've been calling the their argument all along has been Mr. Schollmeyer told Mr. Peterson at the outset of that hearing about the extortion, about the threat, about the fact that this was improper. Mr. Peterson testified unequivocally that Mr. Schollmeyer is a liar. He says he didn't say a word about this until months after the fact. This is in the So that's why the district court made its findings on this point, 47 and 48 in the findings of fact, that Mr. Schollmeyer did not raise this. So even if you thought that what Mr. Bouldress said was inappropriate, and even if you think that what happened was that Ms. Zimmerman recused herself, they still waived. The rule of the administrative panel issues its rule. And you can't just wait and see if you win before you make that kind of complaint. Let me say just a couple of things about the comments. To tightly summarize, your client's position is that the Zimmerman recusal was the nature and substance of it was not communicated to Mr. Zimmerman, to Peterson, excuse me, and that the do-over, if you will, the second hearing went forward appropriately. That's what the mandate told the district court to do, and that's what it did. Yes, sir. That is all correct. Let me just say a couple of words about counsel's comments about Judge Layton. I find this . . . Do you really think that's going to make a difference in this case? It really shouldn't. I will say that my impression is that Judge Layton bent over backwards to give plaintiffs every opportunity in this case. He allowed the depositions of the arbitrators. He denied every single one of my objections. He really went out of his way. No one likes people who grade their papers, and sometimes they get angry when we Yes, sir. We've been around the horn. Okay. Well, the ultimate point here is that all we're talking about is plausibility. You've got a record where Ms. Zimmerman supports the railroad story, Mr. Boldre supports the railroad story, and Mr. Peterson supports the railroad story. The only things that go their way are Mr. Schollmeier's testimony and this So, given all of that, I just don't see how you can determine that there was clear error. This was a bench trial? Yes, Your Honor. Stipulated, too, by both sides? Yes, Your Honor. Okay. Thank you, counsel. Thank you. I think I have a minute left, so let me, very quickly. The waiver argument that he's just made is not in accordance with law under the Railway Labor Act. I commend to you the decision that we cited, which is United Transportation Union versus CSX. It's at 2006 Westlaw 3198811 in our brief. The court there said that Congress, having established a two-year period of statute of limitations for the Railway Labor Act review, a court should not impose a shorter statute of the RLA, which is to encourage the parties who don't like each other, have completely different views, and are compelled by the rules, by the law, to get along, that they have to try and work this out, and that takes time. A waiver argument is complete inefficacy to that kind of judicial, I'm sorry, statutory application. Secondly, the issue of this idea that somehow Ms. Zimmerman coded this thing surreptitiously to give cover to the railroad, there is absolutely not a single shred of evidence to support that. That is an entire fabric created by the railroad after the fact, first introduced in final argument at trial. There's absolutely nothing to support that, and it suggests that Ms. Zimmerman is either a perjurer or a fraud. What they're saying is they're substituting Thank you. I think we've exceeded your time, but we definitely have your argument in mind. I think the briefing is quite extensive from both of you and your citations to the record, so we really do appreciate that. Thank you, Your Honor. A case just argued of the United Transportation Union versus Burlington Northern is submitted, and we're adjourned for the morning. Thank you.
judges: Hawkins, McKeown, Christen